IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
December 11, 2002 Session

## NORA FAYE YOUNG v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 99-A-403      Cheryl A. Blackburn, Judge**

—————————

**No. M2002-00804-CCA-R3-PC - Filed June 4, 2003**

—————————

The petitioner appeals after being denied post-conviction relief. She originally pled guilty to three counts of facilitation of first degree murder and received a forty-five-year sentence. She alleges that her guilty plea was not knowingly, voluntarily, or intelligently entered. She further alleges that her trial counsel knew that her co-defendant made exonerating statements, and she would not have pled guilty if she had known of her co-defendant's exonerating statements. After careful review, we conclude that the evidence does not preponderate against the post-conviction court's findings. We affirm the judgment of the post-conviction court.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

William B. Hawkins, III, Nashville, Tennessee, for the appellant, Nora Faye Young.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Roger D. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner, Nora Faye Young, is presently serving a forty-five-year sentence, as a Range I standard offender, following her guilty plea to three counts of facilitation of first degree murder. She filed a petition for post-conviction relief alleging that her guilty plea was not knowingly, voluntarily, or intelligently entered and that she was denied effective assistance of counsel. After an evidentiary hearing, the post-conviction court denied the petition.

On appeal, the petitioner presents two issues for this Court's review: (1) whether her guilty plea was knowingly and voluntarily entered, and (2) whether she was denied effective assistance of counsel. After a thorough review of the record before this Court, we conclude that the record amply supports the trial court's denial of post-conviction relief.

Prior to July 2, 1998, the petitioner traded a 9-mm pistol to Carlos Stewart. At approximately 7:30 a.m. on July 2, 1998, Frederick Robinson, the co-defendant and the owner of the pistol, discovered that his pistol had been traded and convinced the petitioner to accompany him to Stewart's residence, since she was known to the people in the house. When the petitioner and her co-defendant arrived at the Stewart house, the door was opened for the petitioner. Robinson was armed with an assault rifle and immediately entered, shot, and killed Paul Easley, Shirley Stewart, and Carlos Stewart. In her statement to police, the petitioner stated that Robinson told her of his animosity toward the victims and that he carried a weapon when they went to the Stewart residence.

On September 7, 2000, the petitioner entered a plea of guilty to three counts of facilitation of first degree murder, a Class A felony. The petitioner received fifteen years on each count for a total of forty-five years as a Range I standard offender.

At the post-conviction relief hearing, the petitioner's trial counsel testified that he has been a licensed attorney since September 30, 1978. He said that he did not remember reading the plea to the petitioner but knew that he thoroughly reviewed the plea agreement with her. He said that he and the petitioner had several discussions regarding the petitioner entering a plea. He said he knew the petitioner was taking medications on the day of her plea hearing but did not remember what the petitioner told him. He said he remembered explaining the elements of facilitation to the petitioner, as well as the difference between concurrent and consecutive sentences. He said he did not tell the petitioner the length of her sentence, because he customarily does not do that. He said that his private investigator told him that Frederick Robinson, the petitioner's co-defendant, told him that the petitioner did not have anything to do with the crime and that Robinson was crazy. He said he had the impression that Robinson would say anything he thought would be helpful to the petitioner. He said he was reasonably certain the petitioner was not under the influence of drugs at the time she entered her plea, but she may have been taking medication.

On cross-examination, trial counsel testified that he was aware that Robinson was a co-defendant in the case and was subject to the State seeking the death penalty against him. He said he and the petitioner discussed that the State was going to ask for the death penalty against her co-defendant and could ask for enhanced punishment against her if they elected to do so. He said he talked to the co-defendant after he had received his sentence and his case was concluded. He said he received state funds to investigate the petitioner's case. He said he shared the discovery information he had been given by the State with the petitioner. He said he discussed all possible defenses with the petitioner. He said he had the petitioner psychologically evaluated, and she was found to be competent and sane. He said that early in his representation of the petitioner, she reported hearing voices and was diagnosed with schizophrenia. He said the voices diminished after the petitioner was incarcerated. He said the petitioner's alibi was not an issue in her case. He said

it was the State's theory that the petitioner went to the Stewart residence knowing that Robinson had a gun and that the people inside would open the door for her where they would not for Robinson. He said the petitioner's plea was consistent with that theory and with the facts as he knew them. He said he specifically told the petitioner that she would receive a forty-five year-sentence pursuant to her plea. He said he did not tell the petitioner that she would not see her grandchildren if she did not take the plea. He said he did not pressure or force the petitioner to take a guilty plea.

On redirect, trial counsel testified that he did not tell the petitioner that Robinson could exonerate her but told her that he would say anything to help her. He said Robinson told him that he hid in a bush and waited on the petitioner to go into the Stewart house before jumping out and running in behind her. He said this story was inconsistent with the physical layout or other facts known to him at the time. He said Robinson told him that the petitioner had stolen a gun from him and pawned it for drugs. He said Robinson told him that he got mad and, after a confrontation with the petitioner, she told him she would buy the gun back when she got paid. He said Robinson told him he made the petitioner get his gun back, and he followed her to the Stewart home.

Patrick Joseph Wells, a private investigator for the defense, testified that he interviewed the co-defendant, Frederick Robinson. He said Robinson refused to be interviewed after he got into the prison. He said that before he had an opportunity to interview the petitioner's co-defendant, Robinson got up and said that the petitioner "didn't do it" and said he "did it all." He said Robinson refused to be interviewed.

On cross-examination, Wells said he was present when the petitioner entered her guilty plea. He said he did not observe trial counsel exert any pressure on the petitioner to accept a guilty plea nor did he observe the petitioner exhibit any unusual or bizarre behavior.

On redirect-examination, Wells said he was a witness to the petitioner's plea. He said the petitioner read the plea agreement and said she understood what trial counsel said to her. He said that it was not apparent the petitioner was on medication and that she seemed to get much better as time went by. He said he met with the petitioner six times and on two occasions, the petitioner seemed to be very medicated and was unresponsive. He said the petitioner seemed fine on the day of her plea hearing.

Eleanora Malone, the petitioner's mother, testified that she was present at the petitioner's plea hearing. She said the petitioner spoke rapidly, as she seemed nervous and agitated. She opined the petitioner did not understand that she was getting forty-five years. She said the petitioner thought she would serve a certain number of years and then be released on parole. She said the petitioner was on medication on the day of the plea hearing. She said on the day of the plea hearing, the petitioner was quiet and rude. She said that she has seen a marked improvement in the petitioner's mental state since she has gone to prison. On cross-examination, Malone testified that since the petitioner has been off crack cocaine, she has improved physically and mentally.

Frederick Robinson, the petitioner's co-defendant, was called to the stand by the petitioner's trial counsel. After being sworn in and advised of his rights, he stated his name, exercised his Fifth Amendment right, and refused to testify.

The petitioner testified that she was under the influence of medication at the time she pled guilty. She stated that she had an eighth grade education and can read and write. She said she did not see her attorney or his investigator on the morning of her plea hearing. She said her attorney did not explain to her the length of the sentence or the difference between consecutive and concurrent sentences. She said she thought she would be going to prison from thirteen to forty-five years. She said that early in her case, her attorney began talking about taking a plea and that he thought she was crazy because she said she should not take a plea for something she did not do. She said her attorney told her that if she took a plea, she would eventually get to see her grandchildren. She said her attorney told her that he saw Robinson, but he did not talk to him because Robinson would not speak to him. She said she would not have pled guilty if she had known Robinson had said she was not involved in the shootings. She said that she did not understand the plea and that she signed the paperwork without reading it.

On cross-examination, the petitioner testified that the only medicine she takes is for her blood pressure and that she does not hear voices. She said she thought she was only going to get thirteen years in prison if she pled guilty. She said she was sick at the time she pled guilty and did not understand what was said to her. After the post-conviction court asked the petitioner if she recalled what was said to her at sentencing, the petitioner said she did not know if she heard the trial judge tell her she would receive forty-five years.

At the conclusion of the proof, the post-conviction court denied post-conviction relief and subsequently filed a written order, making findings of fact and conclusions of law. From its own recollections of the guilty plea hearing, the post-conviction court noted that the petitioner "was under oath at the time of the guilty plea and it's just pretty crystal clear she was informed and she did know what she was doing." The post-conviction court found that trial counsel truthfully informed the petitioner concerning the ramifications of her plea agreement and did not deficiently perform his duties in representing the petitioner. After reviewing the transcript of the guilty plea hearing, the post-conviction court concluded that the petitioner knowingly, intelligently, and voluntarily entered a plea of guilty to three counts of facilitation of first degree murder. The petitioner now brings this appeal.

## Analysis

The petitioner contends she received ineffective assistance of counsel because counsel allowed her to enter a guilty plea to three counts of facilitation of first degree murder in light of his knowledge of exculpatory evidence. She contends this rendered her guilty plea involuntary and unknowing. The petitioner's claim of involuntariness of her plea is so intertwined to her claim of ineffective assistance of counsel that we will treat it as one issue.

The claim of ineffective assistance of counsel is a mixed question of law and fact and is subject to de novo review; however, we review the findings of the trial court with a presumption of correctness unless the evidence preponderates otherwise. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Conclusions of law are reviewed under a de novo standard with no presumption of correctness. Id. at 457.

The judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). The trial court's findings of fact are afforded the weight of a jury verdict, and this Court is bound by the trial court's findings unless the evidence in the record preponderates against those findings. Henley, 960 S.W.2d at 578; Alley v. State, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). It is the petitioner's burden to establish that the evidence preponderates otherwise. Henley, 960 S.W.2d at 579.

## A. Ineffective Assistance of Counsel Claims

The petitioner contends that her guilty plea was not knowingly, intelligently, and voluntarily entered. She contends that her trial counsel's failure to disclose exonerating statements to the petitioner was so serious that it fell below an objective standard of reasonableness under the prevailing professional norms, and this failure to disclose resulted in the petitioner entering a plea of guilty, which she would not have otherwise entered. She contends that she lacked the mental capabilities needed to enter into a guilty plea voluntarily, knowingly, and intelligently, because she was under the influence of medications at her guilty plea submission hearing.

The test to determine whether counsel provided effective assistance is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. We may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Trial counsel may not be deemed ineffective merely because a different procedure or strategy might have produced a different result. Williams v. State, 599 S.W.2d 276 (Tenn. Crim. App. 1980). The reviewing court must indulge strong presumption that the conduct of counsel falls within the range of reasonable professional assistance. Strickland, 466 U.S. at 690, 104 S. Ct. at 2066. The petitioner must overcome the presumption that counsel's conduct falls within the wide range of acceptable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; State v. Honeycutt, 54 S.W.3d 762, 769 (Tenn. 2001).

"When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing." Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990); see also Scott v. State, 936 S.W.2d 271, 273 (Tenn. Crim. App. 1996). As a general rule, this is the only way the petitioner can establish that (1) a material witness existed who could have been discovered but for counsel's negligent investigation of the case; (2) a known witness was not interviewed; (3) the failure to discover or interview the witness caused him prejudice; or (4) the failure to present a

known witness resulted in the denial of critical evidence which caused the petitioner prejudice. Black, 794 S.W.2d at 757.

In the instant case, the petitioner's co-defendant was called to the stand at the petitioner's post-conviction hearing, refused to testify, and exercised his Fifth Amendment right against self-incrimination. The petitioner contends that her co-defendant would have testified that she was not involved in the shootings. At the post-conviction hearing, the petitioner's trial counsel alluded to the co-defendant's unreliability by stating that he thought the co-defendant would do anything to help the petitioner. Even the private investigator for the defense stated that the co-defendant refused to be interviewed at the prison and walked away before signing a waiver. Neither the post-conviction court nor this Court can speculate on what a witness's testimony might have been if introduced by counsel. Black, 794 S.W.2d at 757. The petitioner has not carried her burden of proving that the co-defendant would exonerate her.

The post-conviction court found that the petitioner's plea agreement was voluntary. The post-conviction court stated that the "events of the submission hearing did not give this Court any indication that the petitioner was suffering from any mental impairment that would render her unable to appreciate the nature and consequence of her guilty plea." The post-conviction court noted that neither the petitioner's trial counsel nor the court observed behavior that would indicate to the court a need to question whether the petitioner could appreciate the circumstances of the proceedings. At the post-conviction hearing, the petitioner failed to present the testimony of any medical experts who could support her allegations. For these reasons, we conclude the petitioner has failed to meet her burden of proof in the instant case.

## B. Prejudice

The petitioner contends that her trial counsel's representation was so deficient and prejudicial that it had an effect on the decision to enter a guilty plea and on the outcome of the proceedings. She contends that she would not have entered a guilty plea if she had known that her co-defendant had made exonerating statements.

In determining whether a petitioner's guilty plea was knowing and voluntary, this Court must look at the totality of the circumstances. State v. Turner, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995). This Court "is bound by the post-conviction court's findings unless the evidence preponderates otherwise." Bates v. State, 973 S.W.2d at 631. We may neither reweigh or reevaluate the evidence nor substitute our own inferences for those drawn by the trial court. Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997).

The record reflects the petitioner made a knowing, intelligent, and voluntary plea of guilty. As discussed above, we will not speculate what the petitioner's co-defendant would have said if he had testified on the petitioner's behalf. The post-conviction court commented that the petitioner, at her guilty plea hearing, had an opportunity to tell the trial court that she was not involved in the shootings. The post-conviction court commented that "when the facts were read into the record, Ms.

Young was here and present.  And if those weren't the facts, then she had an obligation to tell me." The petitioner had a responsibility to tell the trial court if she was not involved in the crimes for which she was charged, irrespective of any statements from her co-defendant.  The petitioner has failed to meet her burden of proving she has been prejudiced.

## Conclusion

Accordingly, we affirm the judgment of the post-conviction court.

_____
JOHN EVERETT WILLIAMS, JUDGE